UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CASSANDRA KELLY,

                               Plaintiff,

               V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                         Defendant.

_____

**REPORT AND
RECOMMENDATION**

09-CV-1359
(GLS/VEB)

## I. INTRODUCTION

In February of 2007, Plaintiff Cassandra Kelly applied for Supplemental Security Income ("SSI") benefits under the Social Security Act. Plaintiff alleges that she has been unable to work since January 1, 2007, due to physical and mental impairments. The Commissioner of Social Security denied Plaintiff's application. Plaintiff, through her attorneys, Olinsky & Shurtliff, Jaya A. Shurtliff, Esq., of counsel, commenced this action seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On December 22, 2010, the Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 19).

## II. BACKGROUND

The relevant procedural history may be summarized as follows:

Plaintiff applied for benefits on February 2, 2007, alleging disability beginning January 1, 2007. (T at 64-66).[1]  The applications were denied initially and Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held on August 6, 2009, before ALJ Thomas P. Tielens. Plaintiff appeared with her attorney and testified. (T at 18-33).

On September 3, 2009, ALJ Tielens issued a decision denying Plaintiff's application. (T at 10-16).  The ALJ's decision became the Commissioner's final decision on November 5, 2009, when the Appeals Council denied Plaintiff's request for review. (T at 1-3).

Plaintiff, through counsel, commenced this action on December 4, 2009, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1).  The Commissioner interposed an Answer on April 22, 2010. (Docket No. 7). Plaintiff filed a supporting Brief on September 9, 2010. (Docket No. 13).  The Commissioner filed a Brief in opposition on December 15, 2010. (Docket No. 17).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.

For the reasons that follow, it is respectfully recommended that the Commissioner's motion be denied, Plaintiff's motion be granted, and that this case be remanded for further proceedings.

---

[1]Citations to "T" refer to the Administrative Transcript.  (Docket No. 9).

## III. DISCUSSION

### A.      Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford

the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[2]

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at

_____

[2]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.    Analysis**

**1.    Commissioner's Decision**

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the date her benefits application was filed.[3] The ALJ further determined that Plaintiff had the following medically determinable impairment considered "severe" under the Social Security Act: status post left shoulder surgeries for dislocation. (T at 12).

However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments found in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 13).

The ALJ concluded that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work, as defined in 20 CFR § 416.967 (a), except that she was limited to only occasional climbing of ladders, ropes and scaffolds; was required to avoid cold and hazards; and was limited work that is simple and repetitive. (T at 13).

---

[3]The ALJ's decision indicates an application date of January 19, 2007, while the record indicates a date of February 2, 2007. (T at 64).  No party has suggested that this slight discrepancy has any material impact on the case.

The ALJ found that Plaintiff had no past relevant work.  (T at 15).  The ALJ considered Plaintiff's age (20 years old on the application date), education (high school), work experience, and RFC (sedentary work, limited as set forth above), and concluded that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 15-16).  Accordingly, the ALJ found that Plaintiff had not been under a disability, as defined under the Act, from the application date through the date of the ALJ's decision. (T at 16).  As noted above, the ALJ's decision became the Commissioner's final decision on November 5, 2009, when the Appeals Council denied Plaintiff's request for review. (T at 1-3).

### 2.    Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed.  She offers four (4) principal arguments in support of her position.  First, Plaintiff contends that the ALJ improperly concluded that several of her impairments were not severe.  Second, Plaintiff argues that the ALJ's RFC determination was flawed.  Third, Plaintiff asserts that the ALJ did not properly assess her credibility.  Fourth, Plaintiff contends that the ALJ erred by failing to consult a vocational expert.  This Court will address each argument in turn.

### a.    Severity of Impairments

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c). The following are examples of "basic work activities": "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling ... seeing, hearing, and speaking ... [u]nderstanding,

carrying out, and remembering simple instructions ... [u]se of judgment ... [r]esponding appropriately to supervision, co-workers and usual work situations." Gibbs v. Astrue, No. 07-Civ-10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. § 404.1521(b)(l)-(5).

The claimant bears the burden of presenting evidence establishing the severity of his or her impairments. Miller v. Comm'r of Social Sec., No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); see also 20 C.F.R. § 404.1512(a). The "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." Coleman v. Shalala, 895 F.Supp. 50, 53 (S.D.N.Y.1995). Indeed, a "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" Rosario v. Apfel, No. 97-CV-5759, 1999 WL 294727 at *5 (E.D.N.Y. March 19,1999) (quoting Bowen v. Yuckert, 482 U.S. 137, 154 n. 12 (1987)).

In this case, the ALJ concluded that Plaintiff's depression, anxiety, and other mental impairments did not cause more than a minimal impairment in her ability to perform basic work activities and, thus, were not severe impairments. (T at 12).

When evaluating the severity of mental impairments, the regulations require the ALJ to apply a "special technique" at the second and third steps of the review, in addition to the customary sequential analysis. Kohler v. Astrue, 546 F.3d 260, 265-66 (2d Cir.2008) (citing 20 C.F.R. § 404.1520a). The technique first requires a determination of whether the claimant has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b)(1). Then, the ALJ must rate the degree of the claimant's functional limitation resulting from the

impairment in four areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. *See* 20 C.F.R. § 404.1520a(c)(3).

These areas are rated on a scale of "none, mild, moderate, marked, and extreme." 20 C.F.R. §§ 404.1520a(c)(4); 416 .920a(c)(4).  A mental impairment is generally found not severe if the degree of limitation in the first three areas is mild or better and there are no episodes of decompensation. § 404.1520a(d)(1). The ALJ must document "a specific finding as to the degree of limitation in each of the functional areas." 20 C.F.R. § 404.1520a(e)(2).

The ALJ concluded that Plaintiff possessed only mild restrictions in terms of her activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence, or pace; and had never experienced any repeated episodes of decompensation. (T at 12).  The ALJ based his decision upon the assessment of a non-examining State Agency review consultant and portions of a report prepared by a consultative examiner.  (T at 12).

The State Agency review consultant opined that Plaintiff was not significantly limited with regard to understanding and memory. (T at 335).  The consultant found Plaintiff "moderately limited" with regard to carrying out detailed instructions and working in coordination with or proximity to others without being distracted by them. (T at 335). Otherwise, consultant concluded that Plaintiff's concentration and persistence were not significantly limited. (T at 335-36).  The consultant opined that Plaintiff was moderately limited in terms of accepting instructions and responding appropriately to criticism from supervisors, but had no other significant limitation with regard to social interaction. (T at

8

336).  The consultant found moderate limitation with respect to setting realistic goals and making plans independently of others, but otherwise determined that Plaintiff was not significantly limited with respect to adaptation skills. (T at 336).

Dr. Jeanne Shapiro, the consultative examiner referenced above, performed a consultative psychiatric examination in March of 2007.  Dr. Shapiro indicated that Plaintiff appeared capable of understanding and following simple instructions and directions, but might be limited "to some degree" because of dyslexia. (T at 311).  Dr. Shapiro opined that, unless distracted by pain, Plaintiff could maintain attention and concentration for tasks. (T at 311).  In Dr. Shaprio's view, Plaintiff was capable of learning new tasks. (T at 311).

For the reasons that follow, this Court finds that the ALJ's assessment as to this issue was inadequate.  The step two severity analysis does no more than "screen out *de minimis* claims."  Where, as here, the evidence of impairment rises above the *de minimis* level, further analysis is required. Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir.1995).

First, Dr. Shapiro opined that Plaintiff appeared to have "some difficulty adequately dealing with stress." (T at 311).  She also recommended psychiatric treatment to help Plaintiff deal with her psychiatric symptoms. (T at 311).  Dr. Shapiro concluded that Plaintiff was capable of making "some" appropriate decisions and could relate and interact with others "some of the time." (T at 311).  The use of the qualifier "some" indicates a more than *de minimis* level of impairment.  The ALJ did not discuss these findings or attempt to reconcile them with his overall assessment.

Second, as noted above, the non-examining medical consultant indicated that Plaintiff was "moderately limited" with respect to the ability to carry out detailed instructions,

9

work in coordination or proximity to others without being distracted by them, accept instructions and respond appropriately to criticism from supervisors, and to set realistic goals or make plans independently of others. (T at 335-336). Again, these limitation indicate more than a minimal level of impairment.

Third, the ALJ was too hasty in dismissing the findings of Plaintiff's treating therapist. Joseph A. Ridgway, a licensed clinical social worker, diagnosed Plaintiff as suffering from post-traumatic stress disorder and anxiety disorder. Mr. Ridgway assessed no limitation with regard to carrying out simple instructions, mild limitations in terms of understanding and remembering simple instructions, and making judgments on simple work-related decisions. (T at 509). However, he concluded that Plaintiff was moderately limited with respect to understanding and remembering complex instructions, carrying out complex instructions, and making judgments on complex work-related decisions. (T at 509). Mr. Ridgway opined that Plaintiff had marked limitations in terms of her ability to interact appropriately with the public, supervisors, and co-workers and a marked limitation with respect to responding appropriately to usual work situations and changes in a routine work setting. (T at 510).

The ALJ disregarded Mr. Ridgway's assessment, noting that he was not an "acceptable medical source." (T at 12). In this limited respect, the ALJ was correct - a social worker's opinion is not considered a "medical opinion." See Diaz v. Shalala, 59 F.3d 307, 313 (2d Cir.1995); Corson v. Astrue, 601 F. Supp.2d 515, 531-32 (W.D.N.Y. 2009).

The Social Security Regulations provide that "[m]edical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of ... impairment(s)...." Diaz, 59 F.3d at 313 (citing 20 C.F.R.

10

§ 404.1527(a)(2)).  Section 404.1513(a) lists five categories of "acceptable medical sources," none of which mentions therapists or social workers.  Rather, therapists and social welfare agency personnel are expressly listed in a separate section, under "other sources" whose "[i]nformation ... may ... help us to understand how [the] impairment affects your ability to work." Id. (citing 20 C.F.R. § 404.1513(e) (1994)).

However, with that said, the ALJ was not free to simply disregard Mr. Ridgway's assessment on that basis alone.  While opinions from therapists and social workers are not considered "acceptable medical sources," such opinions are nevertheless "important and should be evaluated on key issues such as impairment severity and functional effects." SSR 06-03p, 2006 WL 2329939, at *3 (Aug. 9, 2006); see also White v. Comm'r, 302 F.Supp.2d 170, 174-76 (W.D.N.Y.2004) (reversing where the ALJ failed to give appropriate weight to the plaintiff's social worker, who had a regular treatment relationship with the plaintiff and whose diagnosis was consistent with the treating psychiatrist); Pogozelski v. Barnhart, No. 03-CV-2914, 2004 WL 1146059, at *12 (E.D.N.Y. May 19, 2004) (finding that "some weight should still have been accorded to [the therapist's] opinion based on his familiarity and treating relationship with the claimant"); Allen v. Astrue, 05-CV-0101, 2008 WL 660510, at *9 (N.D.N.Y. Mar.10, 2008) (remanding because ALJ did not evaluate the treating therapist's opinion); Bergman v. Sullivan, No. 88-CV-513, 1989 WL 280264, *3 (W.D.N.Y. Aug. 7, 1989) (holding that treating social worker is "a non-medical source whose opinion concerning the nature and degree of plaintiff's impairment is not only helpful, but critically important, since he is the only treating source").

Indeed, "[b]ased on the particular facts of a case, such as length of treatment, it may

be appropriate for an ALJ to give more weight to a non-acceptable medical source than a treating physician." Anderson v. Astrue, No. 07-CV-4969, 2009 WL 2824584, at *9 (E.D.N.Y. Aug, 28, 2009).

This Court is mindful of the fact that the Second Circuit has stated that "the ALJ has discretion to determine the appropriate weight to accord the [other source's] opinion based on all the evidence before him." Diaz v. Shalala, 59 F.3d 307, 313-14 (2d Cir.1995). However, it was an abuse of that discretion for the ALJ in this case to reject Mr. Ridgway's assessment purely on the grounds that Mr. Ridgway is a social worker.

Moreover, the ALJ's alternative explanation for discounting Mr. Ridgway's assessment is also problematic.  After noting that Mr. Ridgway was not an acceptable medical source, the ALJ stated that "[r]egardless," because Plaintiff's mental impairment caused no more than mild limitation in any of the first three functional areas and she experienced no episodes of decompensation, the impairment was non-severe.  This, of course, begs the question and is not really an alternative explanation for rejecting the therapist's findings.  In other words, rather than offering a reason for rejecting Mr. Ridgway's assessment (beyond the mere fact that he is a social worker), the ALJ simply restated his own conclusion.  Under the circumstances, this was an inadequate rationale.

The assessment of the treating therapist was that Plaintiff had several significant limitations caused by her mental impairments.  This opinion was supported, in part, by the consultative examiner's findings and the State Agency review consultant's assessment, both of which indicated some areas of more than de minimus limitation.  The ALJ made no attempt to reconcile this fact with his conclusion.  Instead, he appears to have employed a "pick and choose" method with regard to the consultative examiner and State Agency

12

review consultant and to have simply dismissed Mr. Ridgway's findings because he is a social worker.  The ALJ erred in both of these respects and the question of whether Plaintiff's mental impairment is severe should be revisited on remand.

Plaintiff also suggests that the ALJ erred because he did not find that her obesity was a severe impairment.  Evidence in the record indicated that Plaintiff was 5' 6" tall and weighed between 228-234 pounds. (T at 83, 258, 392).  Although "[o]besity is not in and of itself a disability; . . . [it] may be considered severe-and thus medically equal to a listed disability-if alone or in combination with another medically determinable ... impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities." Cruz v. Barnhart, No. 04-CV-9011 (GWG), 2006 WL 1228581, at *10 (S.D.N.Y. May 8, 2006); see also SSR 02-1p; 20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.00(Q) (instructing adjudicators to assess carefully the combined effects of obesity and musculoskeletal ailments during Steps 2 and 4 because "[o]besity is a medically determinable impairment that is often associated with disturbance of the musculoskeletal system ... The combined effects of obesity with musculoskeletal impairments can be greater than the effect of each ... considered separately.").

Plaintiff did not cite obesity as a limiting impairment and she offers no explanation has to how her weight, either alone or in combination with her other impairments, significantly limits her ability to perform basic work activities.  Nevertheless, the fact that Plaintiff was obese was clear from the record.  As such, should this Court's overall recommendation be adopted, the ALJ should give consideration on remand to the effect, if any, of Plaintiff's obesity on her overall ability to perform basic work activities.

### b.    RFC Determination

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making a residual functional capacity determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a). An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. LaPorta v. Bowen, 737 F.Supp. 180, 183 (N.D.N.Y.1990).

In this case, the ALJ concluded that Plaintiff retained the RFC to perform sedentary work, as defined in 20 CFR § 416.967 (a), except that she was limited to only occasional climbing of ladders, ropes and scaffolds; was required to avoid cold and hazards; and was limited work that is simple and repetitive. (T at 13). Plaintiff challenges the ALJ's RFC determination on several grounds, each of which will be discussed in turn.

### i.     Lack of Function-by-Function Analysis

Plaintiff argues that RFC assessment was inadequate because the ALJ did not detail specific limitations on a "function by function" basis. SSR 96-8p provides that the ALJ's RFC assessment must include a function-by-function analysis of the claimant's functional limitations or restrictions and an assessment of the claimant's work-related abilities on a function-by-function basis. With regard to physical limitations, this means the ALJ must

make a function by function assessment of the claimant's ability to sit, stand, walk, lift, carry, push, pull, reach, handle, stoop, or crouch. 20 C.F.R. § 404.1513(c)(1); §§ 404.1569a(a), 416.969a(a); Martone v. Apfel, 70 F. Supp.2d 145, 150 (N.D.N.Y.1999). Once the function-by-function analysis is completed, the RFC may be expressed in terms of exertional levels of work, *e.g.,* sedentary, light, medium, heavy, and very heavy. Hogan v. Astrue, 491 F.Supp.2d 347, 354 (W.D.N.Y.2007).

The ALJ in this case did not provide a function-by-function analysis.  Rather, he simply expressed the RFC in terms of an exteritonal level of work (*i.e.* sedentary), with some limitations.  The Second Circuit has not yet decided whether non-compliance with SSR 96-8p is *per se* grounds for a remand.

At least two circuit courts of appeals have concluded that "[a]lthough a function-by-function analysis is desirable, the ALJ need not discuss each factor in his written opinion." Delgado v. Comm'r of Soc. Sec., 30 Fed. App'x 542, 547-48 (6th Cir.2002) (quoting Bencivengo v. Comm'r of Soc. Sec., 251 F.3d 153 (3d Cir.2000)).

District courts in the Second Circuit have reached different conclusions, with courts in the Northern and Western Districts of New York generally concluding that a remand is required when the ALJ fails to provide a function-by-function analysis.  See, e.g., Wood v. Comm'r of Soc. Sec., No. 06-CV-157, 2009 WL 1362971, at *6 (N.D.N.Y. May 14, 2009)(collecting cases); McMullen v. Astrue, 05-CV-1484, 2008 WL 3884359, at *6 (N.D.N.Y. Aug. 18, 2008);  Brown v. Barnhart, No. 01-CV-2962, 2002 WL 603044, at *5-7 (E.D.N.Y. Apr.15, 2002)("In sum, because the ALJ did not properly apply the legal standard in Social Security Ruling 96-8p for assessing residual functional capacity, I cannot properly conclude that his finding that the claimant retained the residual functional capacity to do her

past work was supported by substantial evidence."); <u>Matejka v. Barnhart</u>, 386 F.Supp.2d 198, 208 (W.D.N.Y.2005) ("The ALJ's decision did not address the plaintiff's ability to sit, stand, or walk ... Since the ALJ failed to make a function-by-function analysis of plaintiff's RFC, his determination that she had the RFC for sedentary work is not supported by substantial evidence."); <u>but</u> <u>see</u> <u>Casino-Ortiz v. Astrue</u>, 2007 WL 2745704, at *13 (S.D.N.Y. Sept. 21, 2007)(sustaining ALJ's decision, notwithstanding failure to provide function-by-function analysis); <u>Novak v. Astrue</u>, No. 07 Civ. 8435, 2008 WL 2882638, at *3 & n. 47 (S.D.N.Y. July 25, 2008)("The A.L.J. must avoid perfunctory determinations by considering all of the claimant's functional limitations, describing how the evidence supports her conclusions, and discussing the claimant's ability to maintain sustained work activity, but she need not provide a narrative discussion for each function."); <u>but</u> <u>see</u> <u>Martin v. Astrue</u>, No. 05-CV-72, 2008 WL 4186339, at *16 (N.D.N.Y. Sept. 9, 2008) (declining to remand, despite finding that the ALJ grouped the functions in his function-by-function analysis because "treating the activities separately would not have changed the result of the RFC determination").

This Court is inclined toward the view that, in limited circumstances, the ALJ's failure to provide a function-by-function analysis might constitute harmless error, provided that the absence of the analysis did not frustrate meaningful review of the ALJ's overall RFC assessment.[4]  However, the issue need not be resolved in this particular case.  Given that remand is recommended on other grounds, this Court recommends that remand likewise be ordered for the ALJ to provide a function-by-function assessment of Plaintiff's exertional

---

[4]Several courts have recognized the general applicability of the harmless error rule to the review of disability denial claims.  <u>See</u>, <u>e.g.</u>, <u>Duvergel v. Apfel</u>, No. 99 Civ. 4614, 2000 WL 328593, at *11 (S.D.N.Y. Mar.29, 2002); <u>Walzer v. Chater</u>, 93 Civ. 6240, 1995 WL 791963 at *9 (S.D.N.Y. Sept.26, 1995).

limitations, as required under SSR 98-6p.

### ii.     Failure to Follow Treating Physician's Rule

Plaintiff also argues that the ALJ violated the treating physician's rule when formulating his RFC determination.  Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).[5]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances.  In this regard, the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); see also de Roman, 2003 WL 21511160, at *9; Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998); Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998) .

In the present case, Dr. Tamara Scerpella, Plaintiff's treating physician, provided a

---

[5]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

17

functional capacity report, in which the doctor opined that Plaintiff could occasionally lift/carry up to 10 pounds, but never more than that. (T at 506). Dr. Scerpella indicated that Plaintiff could not sit comfortably for more than ½ hour at a time. (T at 506). The doctor further opined that Plaintiff was very limited with regard to fine manipulation and grasping with her left hand and that extreme cold would increase the symptoms. (T at 507).

The ALJ afforded "partial weight" to Dr. Scerpella's opinion, but did not specifically state what portion of the doctor's opinion he was crediting and what portion he was discounting. In contrast, the ALJ gave "significant weight" to the findings of a State Agency review consultant. The consultant opined that Plaintiff could frequently lift/carry less than 10 pounds; stand/walk for about 6 hours in an 8-hour workday; sit for about 6 hours in an 8-hour workday; and push/pull in unlimited amounts. (T at 373). The consultant indicated that Plaintiff's impairment was limited to her left arm and, as such, she could perform a one-armed job, such as usher, ticket taker, or messenger. (T at 373). The consultant found that Plaintiff had no manipulative limitations. (T at 374).

The ALJ suggested that Dr. Scerpella's functional capacity report "closely resemble[d]" that of the State Agency consultant. (T at 15). It is impossible to sustain this conclusion. Dr. Scerpella opined that Plaintiff could not sit for more than ½ hour at a time comfortably; the consultant determined that Plaintiff could sit for 6 hours in an 8-hour workday. The ALJ made no attempt to reconcile this conflict, to explain why the treating physician's assessment was not entitled to controlling weight, and/or to justify his decision to credit the conclusion of a non-examining review consultant. This failure materially undermines the ALJ's conclusion that Plaintiff retained the RFC to perform sedentary work. "Sedentary work . . . generally involves up to . . . six hours of sitting in an eight-hour

workday." Perez v. Chater, 77 F.3d 41, 46 (2d Cir.1996).

Moreover, the ALJ's failure to provide a function-by-function assessment frustrates meaningful review of this aspect of his determination.   It is not clear how long he believed Plaintiff could sit during a typical work day.  To the extent that the ALJ's sedentary work finding is read to imply an ability to sit for 6 hours in an 8-hour work day, the ALJ erred by failing to offer a rationale for discounting Dr. Scerpella's assessment concerning Plaintiff's ability to sit for prolonged periods. See Snell v. Apfel, 177 F.3d 128, 133 (2d Cir.1999) ("Failure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand"); cf. Conway v. Barnhart, No. 00 Civ. 8148, 2002 WL 31478192, at *4 (S.D.N.Y. Nov.6, 2002) (holding that remand was proper "when there is a question as to how the ALJ applied legal standards, such as determining what controlling weight was given to a treating physician's conclusions and diagnosis" (citing Rosa v. Callahan, 168 F.3d 72, 79-81 (2d Cir.1999)).

This Court is also troubled by the Commissioner's failure to obtain a *bona fide* consultative examination of Plaintiff's physical limitations.  Dr. Kalyani Ganesh completed a consultative examination in March of 2007.  However, he was not able to examine Plaintiff's left arm, which was immobilized in a sling at the time of the examination due to recent surgery. (T at 313, 315).  Given the fact that Plaintiff's primary alleged physical impairment relates to her left arm, this consultative exam was of very little practical value.  On remand, the ALJ should certainly consider whether an additional consultative examination is warranted.

Plaintiff suggests that the ALJ should have requested additional information from her other treating sources  - Dr. Lok, Dr. Ali, and Dr. Thomas.  However, Plaintiff does not

19

explain how or why this additional information was necessary to provide a complete medical record.  As such, while this Court finds that the ALJ erred in his overall RFC determination for the reasons outlined above, Plaintiff has not offered any specific argument in support of her suggestion that the ALJ erred in this particular respect.

Fundamentally, the flaw in the ALJ's analysis is that he failed to reconcile his overall RFC finding with the treating physician's opinion.  In particular, he did not offer sufficient reasons for discounting the treating physician's assessment concerning Plaintiff's manipulative limitations and ability to sit for prolonged periods.  This issue should therefore be revisited on remand.

### c.    Credibility

The claimant's credibility is an important element in Social Security disability claims, and such evidence must be thoroughly considered. See Ber v. Celebrezze, 333 F.2d 923 (2d Cir.1994). Further, if an ALJ rejects a claimant's testimony of pain and limitations, he or she must be explicit in the reasons for rejecting the testimony. See Brandon v. Bowen, 666 F.Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and

other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Lewis v. Apfel, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's credibility, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....

> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ...

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the plaintiff's contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the plaintiff's credibility:

1. [Plaintiff's] daily activities;
2. The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
3. Precipitating and aggravating factors;
4. The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
5. Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;
6. Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;
7. Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether

21

there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F. Supp 604, 608 (S.D.N.Y.1987)).

In this case, Plaintiff testified that she cannot drive or care for her child and that her pain causes her to stay at home most of the time. (T at 24).  She occasionally requires assistance with dressing. (T at 31). Plaintiff stated that numbness in her left hand makes handling objects difficult. (T at 32).

The ALJ concluded that while Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible to the extent they were inconsistent with the ALJ's RFC assessment. (T at 14).

This credibility assessment suffers from the same flaws discussed above.  The ALJ afforded "partial" weight to Dr. Scerpella's functional capacity report, finding that it "closely resemble[d]" the assessment of the State Agency review consultant.  As outlined above, however, the treating physician's opinion actually differed in at least two material respects from that of the consultant (namely, with regard to Plaintiff's ability to sit for prolonged periods and manipulate objects with her left hand).  The ALJ made no attempt to reconcile this conflict and offered no rationale for discounting the treating physician's findings.  It is also not clear that the ALJ made an adequate effort to question Plaintiff concerning her ability to sit for prolonged periods.[6]  As such, the issue of Plaintiff's credibility should be revisited on remand.

---

[6]The hearing transcript provided to this Court appears to be incomplete (T at 18-33) and thus it is not clear what, if any, testimony was elicited during the hearing concerning Plaintiff's ability to sit.

22

### d.      Failure to Consult Vocational Expert

At step 5 in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering her physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). The second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). See Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir.1986).

The function of the Grids was succinctly summarized by the court in Zorilla v. Chater, 915 F.Supp. 662, 667 (S.D.N.Y.1996) as follows:

> In meeting [his] burden of proof on the fifth step of the sequential evaluation process described above, the Commissioner, under appropriate circumstances, may rely on the medical-vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grid." The Grid takes into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience. Based on these factors, the Grid indicates whether the claimant can engage in any other substantial gainful work which exists in the national economy. Generally the result listed in the Grid is dispositive on the issue of disability.

Id.

"The Grid classifies work into five categories based on the exertional requirements of the different jobs. Specifically, it divides work into sedentary, light, medium, heavy and very heavy, based on the extent of requirements in the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, and pulling."  Id. at 667 n. 2; see 20 C.F.R. §

404.1567(a). Upon consideration of the claimant's residual functional capacity, age, education, and prior work experience, the Grid yields a decision of "disabled" or "not disabled." 20 C.F.R. § 404.1569, § 404 Subpt. P, App. 2, 200.00(a).

If a claimant's work capacity is significantly diminished by non-exertional impairments beyond that caused by his or her exertional impairment(s), then the use of the Grids may be an inappropriate method of determining a claimant's residual functional capacity and the ALJ may be required to consult a vocational expert. See Pratts v. Chater, 94 F.3d 34, 39 (2d Cir.1996); Bapp v. Bowen, 802 F.2d 601, 604-605 (2d Cir.1986).

In this case, the ALJ used the Grids in reaching his disability determination.  (T at 15).  As the Second Circuit explained in Pratts v. Chater, the applicability of the Grids is determined on a case-by-case basis. Pratts, 94 F.3d at 39 (citing Bapp, 802 F.2d at 605-06).  When nonexertional impairments are present, the ALJ must determine whether those impairments "significantly" diminish the claimant's work capacity beyond that caused by his or her exertional limitations. Id.  A claimant's work capacity is "'significantly diminished' if there is an 'additional loss of work capacity . . . that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity.'" Id. (quoting Bapp, 802 F.2d at 606).

"The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15.  "A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base." Id.

24

In this case, the ALJ concluded that Plaintiff's mental impairments were non-severe and, thus, did not make any finding with regard to whether Plaintiff's non-exertional impairments significantly diminished her work capacity.  For the reasons outlined above, the ALJ's conclusion that Plaintiff's mental impairments were non-severe at step two of the sequential evaluation process was flawed and should be revisited on remand.  As such, the step five analysis concerning Plaintiff's non-exertional impairments will likewise need to be reconsidered on remand.   To the extent those impairments are found to significantly diminish Plaintiff's work capacity beyond that caused by her exertional impairments, consultation with a vocational expert may be required.

In addition, the ALJ's use of the Grids as a framework was based upon his conclusion that Plaintiff retained the RFC to perform sedentary work, subject to certain limitations. (T at 16).  As outlined above, the ALJ's RFC analysis was flawed and, as such, this aspect of the step five analysis should likewise be revisited on remand.

### 3.    Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).  Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008).  Given the deficiencies in the record as outlined above, it is recommended that the case be remanded for further proceedings consistent with this

Report and Recommendation.

## IV. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Plaintiff's motion for judgment on the pleadings be granted, the Commissioner's motion be denied, that the decision of the Commissioner be reversed, and that the case be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405 (g) for further administrative proceedings consistent with this Report and Recommendation.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:   January 18, 2011

Syracuse, New York

# V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

January 18, 2011

Victor E. Bianchini
United States Magistrate Judge